UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
STACEY LONG,

                            Plaintiff,

    -against-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION and CARLOS BORRERO
(individually and in his official capacities),

                            Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**
15–CV–3272 (JMA)(RLM)

**AZRACK, United States District Judge:**

       On June 4, 2015, plaintiff Stacey Long filed this action against defendants the New York City Department of Education ("DOE") and Carlos Borrero, in his individual and official capacities, alleging discrimination in violation of Title VII, Section 1983, the New York State Human Rights Law, and the New York City Human Rights Law. Defendants now move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.

## I.    BACKGROUND

       Plaintiff, a former DOE employee, alleges that throughout her employment, defendants discriminated against her based on her race and gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e et seq. ("Title VII"), 42 U.S.C § 1983 ("Section 1983"), New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). Plaintiff alleges that defendants' discrimination created a hostile work environment and lead to her constructive discharge from employment. Plaintiff also claims that after she was rehired by the DOE as a teacher, defendants subsequently fired her from that position as retaliation for her reporting the alleged constructive discharge, in violation of Title VII, Section

1

1983, the NYSHRL, and the NYCHRL.

Plaintiff began her employment with the DOE as a teacher in 1997. (Compl. ¶ 8, ECF No. 1.) In October 2011, plaintiff was transferred to the High School for Community Leadership ("HSCL"), where she ran an internship program and taught writing and literature. (Id. ¶ 10.) Borrero was the principal at HSCL and plaintiff's supervisor during her tenure at HSCL. (Id.) From the outset of her employment, Borrero made inappropriate remarks relating to plaintiff's race and gender.

In November 2011, during a meeting with Borrero to discuss issues with an internship program, Borrero told plaintiff "that she should 'use her assets,' to get what she wanted." (Id. ¶ 13.) He further told plaintiff "that she should wear sexy outfits, low cut tops, and high heels, and that she should flirt with her 'beautiful blue eyes.'" (Id.) Several weeks later, Borrero told plaintiff that she "should be more flirtatious and 'flaunt her assets,' by 'wearing sexy outfits, so they can't resist you,'" and said that plaintiff was "not trying hard enough due to her failure to comply with [Borrero's] directives and dress in a provocative manner." (Id. ¶ 14.) In spring 2012, Borrero made a comment to plaintiff that she "must have a 'spell'" on her students to get them to listen and do work. (Id. ¶ 16.)

In spring 2012, in response to a question from a student regarding how to conduct himself in a job interview, Borrero told the student to "[g]o ask Ms. Long. She's white. She knows all the jargon and the white way of speaking that will land you the job." (Id. ¶ 17.) On other occasions, Borrero held meetings with plaintiff and a Hispanic social worker who spoke English, but conducted the entire meeting in Spanish. (Id. ¶ 18.)

On June 12, 2012, Borrero called plaintiff into his office and told her that he did not want plaintiff working at HSCL the following school year. (Id. ¶ 20.) Borrero said that "while [plaintiff]

2

was one of the most effective teachers at the school . . . , he wanted his staff to behave as though they were a family, and [plaintiff] does not fit in in that regard." (Id.) Borrero then told plaintiff that "he would issue her an [unsatisfactory] rating and make it impossible for her to transfer, and ultimately have her terminated from the DOE unless she agreed to resign from her position." (Id. ¶ 21.) Borrero gave plaintiff forty-five minutes to decide what to do. (Id.) Plaintiff ultimately agreed to resign from her position at HSCL. (Id. ¶ 22.)

In October 2012, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the DOE's Office of Equal Opportunity, alleging that she was discriminated against based on her race and gender during her employment with the DOE. (Id. ¶ 23.)

In September 2014, plaintiff was rehired as a teacher by the DOE at I.S. 278. (Id. ¶ 24.) However, on November 17, 2014, the DOE terminated plaintiff and advised her that she could not re-apply to work for the DOE for twelve months. (Id. ¶ 25.) The DOE told plaintiff that she was terminated for violating DOE regulations because she failed to give timely notification of her resignation to her supervisor back in June 2012.

Plaintiff initiated this litigation on June 4, 2015.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, plaintiff must allege sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to

3

draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Mere labels and legal conclusions will not suffice.  Twombly, 550 U.S. at 555.  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." Iqbal, 556 U.S. at 678.

## III.   DISCUSSION

### A. Timeliness of Plaintiff's Claims

Defendants argue that plaintiff's Section 1983 constructive discharge, hostile work environment, and quid pro quo sexual harassment claims and most of her NYSHRL and NYCHRL claims are untimely.  Plaintiff argues that her claims stemming from her constructive discharge and timely and that her hostile work environment claims are timely under the continuing violation doctrine.

#### 1. Timeliness of Plaintiff's Section 1983 Claims

Defendants argue that plaintiff's Section 1983 claims that accrued prior to June 4, 2012, are barred by the applicable three-year statute of limitations period for Section 1983 claims. Defendants, however, eventually concede that the Section 1983 claims arising out of plaintiff's alleged constructive discharge on June 12, 2012 are not time-barred.  Therefore, plaintiff's constructive discharge discrimination claim and quid pro quo sexual harassment claim, which both rely on plaintiff's June 12, 2012 alleged constructive discharge as an adverse employment action, are not time-barred.  Additionally, plaintiff's retaliation claim, which stems from her discharge in September 2014, is not time barred.

With respect to the hostile work environment claim, plaintiff contends that this claim is timely under the continuing violation doctrine.  Defendants counter that plaintiff has failed to establish a connection between Borrero's allegedly inappropriate remarks that occurred prior to

4

June 4, 2012, and the alleged constructive discharge on June 12, 2012.

The continuing violation doctrine extends the limitations period in cases alleging a hostile work environment because "[h]ostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002) (internal citations omitted). When the continuing violation doctrine applies, the court may consider "the entire time period of the hostile environment," even though "some of the component acts . . . fall outside the statutory time period . . . [p]rovided that an act contributing to the claim occur within the filing period." Id. at 117, 122. At least one act that is "part of the same actionable hostile work environment practice" must "fall[] within the statutory time period." Id. at 120, 122.

However, not all discriminatory acts are part of a continuing violation. See id. at 120. In determining whether the continuing violation doctrine applies, courts consider whether incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers. Id. Moreover, "[a]cts occurring outside the limitations period that are significantly far apart from each other are 'fatal' to a continuing violation argument." Benson v. North Shore-Long Island Jewish Health Sys., 482 F. Supp. 2d 320, 330 (E.D.N.Y. 2007).

Here, plaintiff's hostile work environment claim is timely under the continuing violation doctrine. Plaintiff alleges that she was constructively discharged because of racial discrimination and her resistance to Borrero's sexual harassment. Although much of the harassing comments and conduct occurred outside of the limitations period, plaintiff has plausibly established a connection between Borrero's inappropriate remarks and the alleged constructive discharge in June 2012.

5

Therefore, at the motion to dismiss stage, the hostile work environment claim, including the alleged conduct from 2011, is timely under the continuing violation doctrine.

### 2. Timeliness of Plaintiff's NYSHRL and NYCHRL Claims

Defendants' argue that most of plaintiff's NYSHRL and NYCHRL claims against the DOE and Borrero are barred by the statute of limitations.

Generally, the statute of limitations for NYSHRL and NYCHRL claims is three years. See N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8–502(d). However, New York Education Law § 3813(2–b) provides that the limitations on a claim brought against individuals or entities referenced in Section 3813(1), which includes boards of education, is one year. See Amorosi v. South Colonie Ind. Cent. School Dist., 9 N.Y.3d 367, 373 (N.Y. 2007); see also Rosenberg v. City of New York, No. 09-CV-4016, 2011 WL 4592803, at *15 (E.D.N.Y. Sept. 30, 2011). Plaintiff commenced this action on June 4, 2015. Therefore, her claims against the DOE that accrued before June 4, 2014, are time barred, as well as her claims against Borrero that accrued before June 4, 2012.

Plaintiff concedes that her NYSHRL and NYCHRL claims against the DOE relating to her alleged constructive discharge on June 12, 2012, are barred by the one-year statute of limitations. Therefore, plaintiff's NYSHRL and NYCHRL claims against the DOE for constructive discharge, sexual harassment, and hostile work environment are dismissed with prejudice.

However, the NYSHRL and NYCHRL claims against Borrero are within the three-year statute of limitations applicable to him, and are therefore timely. Plaintiff's NYSHRL and NYCHRL retaliation claims against both the DOE and Borrero, which stem from plaintiff's termination in November 2014, are not barred by the statute of limitations.

**B.  Constructive Discharge Claim**

Defendants contend that plaintiff's constructive discharge claim fails because she has not plausibly alleged an adverse employment action.  Defendants argue that plaintiff "was never threatened with termination," but only with an unsatisfactory rating. (Def. Br. at 8.)  According to defendants, plaintiff simply resigned, when she should have sought a hearing as redress.  The Court disagrees because the complaint specifically alleges that plaintiff was threatened with termination.

"An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily."  Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004) (citation and alteration omitted).  "Working conditions are intolerable when, viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Id. at 230 (citation and alteration omitted).  "[T]o state a prima facie case of constructive discharge, [a plaintiff] must establish that the constructive discharge 'occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in a protected class.'"  Terry v. Ashcroft, 336 F.3d 128, 152 (2d Cir. 2003) (citation omitted).

To establish a constructive discharge claim, it is not enough that the plaintiff resigns to avoid potential disciplinary charges or subjectively fears termination.  See Dall v. St. Catherine of Siena Med. Ctr., 966 F. Supp. 2d 167, 177 (E.D.N.Y. 2013).  However, a threat of termination can be sufficient to show constructive discharge.  See id. (collecting cases).  "Courts look to a variety of factors to determine whether threats of termination are sufficient, such as whether the threats of termination were repeated, direct, or involved additional adverse conduct."  Id.

7

Plaintiff plausibly alleges that she was constructively discharged based on her race and gender. While the complaint alleges that Borrero threatened to issue plaintiff an unsatisfactory rating, the complaint also alleges that Borrero advised plaintiff that he would "ultimately have her terminated from the DOE unless she agreed to resign from her position." (Compl. ¶ 21.) The complaint further alleges that plaintiff had only forty-five minutes to consider resignation. (Id.) The combination of Borrero's direct threat of termination and the short time period given for plaintiff to decide whether to resign tips the balance in plaintiff's favor to sufficiently plead a constructive discharge at the motion to dismiss stage. Plaintiff has plausibly alleged an adverse action by pleading that she was forced to resign, under the particular circumstances, rather than face termination.[1] Therefore, the Court denies defendants' motion to dismiss the constructive discharge claim.

### C. Quid Pro Quo Sexual Harassment

Defendants argue that plaintiff has not alleged sufficient facts to support a claim of quid pro quo sexual harassment. The Court disagrees.

To prevail on a quid pro quo harassment claim, a plaintiff must demonstrate that "a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. at 761. Quid pro quo harassment claims are actionable under Title VII as well as under Section 1983.[2] See Ragin v. Newburgh Enlarged City Sch. Dist., 2009 WL 4906111,

---

[1] Additionally, the Court notes that defendants provided no information regarding what potential forms of grievance or redress, if any, plaintiff had available to challenge a negative performance review.

[2] Plaintiff also alleges claims of employment discrimination under the NYCHRL. The NYCHRL standard of liability

8

at *7 (S.D.N.Y. Dec. 17, 2009) (analyzing Section 1983 quid pro quo claim under Title VII standards).

Defendants argue that "plaintiff's quid pro quo harassment claims fail substantively, because plaintiff has failed to allege that Borrero actually made any sexual advances or overtures toward her." (Def. Br. at 9.) However, the complaint alleges that Borrero directed plaintiff to "use her assets to get what she wanted" and "wear[] sexy outfits," and that Borrero "accused [plaintiff] of not trying hard enough due to her failure to comply with [plaintiff's] directives . . . to dress in a provocative manner." (Compl. ¶¶ 13–14.) As explained above, plaintiff has sufficiently alleged an adverse employment action in the form of constructive discharge. At the motion to dismiss stage, the complaint plausibly alleges that plaintiff was constructively discharged for refusing to comply with defendant's directive that plaintiff dress in a provocative manner.

### D. Hostile Work Environment Claim

Defendants argue that plaintiff has not alleged sufficient facts to support a hostile work environment claim. The Court rejects defendants' arguments.

Claims of hostile work environment under Section 1983 and NYSHRL are governed by the same standard developed that applies to Title VII harassment claims. See Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). To state a hostile work environment claim, a plaintiff must plead facts that would tend to show conduct that (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abuse; and (3) creates such an environment because of the plaintiff's protected class. Redd v. New York Div. of Parole, 678 F.3d

---

is lower than the standard for a Title VII claim. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). Therefore, to the extent that plaintiff states a claim under Title VII and the NYSHRL, she necessarily states a claim under the NYCHRL.

9

166, 175 (2d Cir. 2012).    Additionally, plaintiff's Section 1983 claims require plaintiff to allege sufficient facts showing the discrimination was intentional.  Id.

"Incidents that are few in number and that occur over a short period of time may fail to demonstrate a hostile work environment."  Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (internal quotation marks omitted); see also Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) ("Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.").  The same applies to comments of a sexual nature.  In other words, offhand comments and isolated incidents—unless extremely serious—will not amount to a discriminatory hostile work environment.  Id.

Nevertheless, the Second Circuit has consistently "cautioned against setting the bar [for a hostile work environment claim] too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of his employment altered for the worse."  Terry, 336 F.3d at 148.

Here, plaintiff has alleged sufficient facts that verbal conduct of a sexual and racial nature was sufficiently severe and pervasive to render the work environment hostile.  The complaint alleges that Borrero: commented that plaintiff should "use her assets" to get what she wants, (Compl. ¶ 13), and "flaunt her assets by wearing sexy outfits," (id. ¶ 14); told students to ask plaintiff questions regarding job interviews because plaintiff is white and "knows all the jargon and the white way of speaking that will land [students] the job," (id. ¶ 17); isolated plaintiff by conducting meetings in Spanish, (id. ¶ 18); and told plaintiff that "he wanted his staff to behave as though they were family, and Long did not fit in in that regard," (id. ¶ 20).  At this stage, these allegations are sufficient to plausibly allege that a reasonable person could find Borrero's conduct

10

was so severe and pervasive that it created a hostile work environment. Therefore, defendants'
motion to dismiss the hostile work environment claim is denied.

### E. Retaliation Claim

Defendants argue that plaintiff's retaliation claim should be dismissed because plaintiff has failed to plausibly allege a causal connection between a protected activity and plaintiff's ultimate discharge. The Court agrees.

"Title VII's anti-retaliation provision is 'construed to cover a broad range of employer conduct,'" St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 322 (E.D.N.Y. 2014) (quoting Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 173, (2011)), and "includes both 'opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings,'" Moore v. Kingsbrook Jewish Med. Ctr., No. 11–CV–3625, 2013 WL 3968748, at *15, (E.D.N.Y. July 30, 2013) (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)); see also Vega, 801 F.3d at 91 ("Retaliation occurs when an employer takes action against an employee . . . because he engaged in protected activity—complaining about or otherwise opposing discrimination.").

Retaliation claims are analyzed under the same standard for NYSHRL and Title VII.[3] Garnett–Bishop v. New York Comm. Bancorp, Inc., No. 12–CV–2285, 2014 WL 5822628, at *23 (E.D.N.Y. Nov. 6, 2014). To successfully plead a retaliation claim under Title VII and NYSHRL, plaintiff must plausibly allege, "(1) participation in a protected activity; (2) that the defendant

---

[3] Plaintiff's NYCHRL retaliation claim must be analyzed under the more liberal standard applicable to NYCHRL claims. The NYCHRL makes it an "unlawful discriminatory practice [f]or an employer . . . because of the actual or perceived . . . race . . . [or] gender . . . to refuse to hire or employ . . . such person." NYCHRL § 8–107(a). The law has a "uniquely broad and remedial purposes," NYCHRL § 8–130, such that courts should construe NYCHRL "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik, 715 F.3d at 109. Therefore, to state a claim under the NYCHRL, a plaintiff need only show that she was treated "less well than other employees" because of her protected characteristic. Id. The Court has considered plaintiff's NYCHRL retaliation claim under this more liberal standard.

11

knew of the protected activity; (3) an adverse action; and (4) a causal connection between the protected activity and the adverse employment action." Littlejohn v. City of New York, 795 F.3d 297, 316 (2d Cir. 2015); see also Vega, 801 F.3d at 90. Relevant to this case, the "filing of discrimination charges with the EEOC . . . is unquestionably a protected activity." Nielsen v. Bellevue Hosp., No. 94–CV–0774, 1996 WL 457326, at *9, (S.D.N.Y. Aug. 14, 1996); see also Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993) (finding that the plaintiff engaged in protected activity by filing an EEOC complaint).

Defendants argue that plaintiff has failed to plead a causal connection between plaintiff's protected activities and the adverse employment action—i.e., plaintiff's discharge in November 2014. To establish a causal link, plaintiff must show "that retaliation was a 'but-for' cause of the adverse action." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013) (quoting Univ. of Texas Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2526 (2013)).

"A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" Littlejohn, 795 F.3d at 319 (quoting Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)). Circumstantial evidence may additionally consist of proof that the complaining employee was "treated differently than other employees who did not engage in a protected activity," Conklin v. Cnty. of Suffolk, 859 F. Supp. 2d 415, 433 (E.D.N.Y. 2012), or proof of "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action," Collazo v. Cnty. of Suffolk, No. 12-CV-2196, 2016 WL 660856, at *17 (E.D.N.Y. Feb. 17, 2016).

Plaintiff has not sufficiently alleged facts that would tend to establish a causal connection

between her discharge in November 2014 and the filing of her EEOC and Office of Equal Opportunity complaint of discrimination in October 2012. First, as plaintiff acknowledges, the temporal proximity between the protected activity and plaintiff's discharge is not sufficiently close to infer retaliation. Where a plaintiff relies on temporal proximity between the employer's knowledge of protected activity and an adverse action as proof of causality, "the temporal proximity must be 'very close.'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001); see Morisseau v. DLA Piper, 532 F. Supp. 2d 595, 617 & n.142 (S.D.N.Y. 2008) ("While the Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, the weight of authority supports the view that ten or twelve months is too long."). Here, the gap of over two years between plaintiff's protected activity in October 2012, and her termination in November 2014 is sufficiently large to sever an inference of retaliation.

Second, the complaint is devoid of other plausible allegations that would suggest a causal connection between plaintiff's protected activity and her termination. Plaintiff does not allege that plaintiff was treated differently from defendants' other employees who did not engage in protected activities. Plaintiff does not point to any weaknesses, inconsistencies, or contradictions in the DOE's purported reason for plaintiff's termination. Plaintiff merely alleges that "[t]he pretextual reason given for her termination related to false allegations that, at the times she was constructively discharged, she violated DOE regulations by failing to give timely notification of her 'resignation' to her supervisor." (Compl. ¶ 25.)

As an initial matter, the Court notes that plaintiff's allegations in the complaint regarding her retaliation claims are, at best, ambiguous. It is unclear to the Court whether plaintiff is alleging that her resignation did not violate a DOE regulation because (1) no applicable DOE regulation

13

exists; (2) plaintiff's resignation complied with any applicable DOE regulation; or (3) plaintiff was constructively discharged, and thus not bound by any applicable DOE regulation that applies to resignations.

While plaintiff contends that her constructive discharge in 2012 was discriminatory, she does not allege that DOE regulations did not apply to employees who fail to give timely notification of resignation. Additionally, the Court notes that plaintiff was rehired by the DOE after plaintiff filed her complaint with the EEOC and the DOE Office of Equal Opportunity. Plaintiff has not plausibly alleged facts that would tend to establish a causal connection between her discharge in November 2014 and any protected activity. Plaintiff's retaliation claim is dismissed.

### F. Monell Liability

Defendants argue that plaintiff's Section 1983 claim against the DOE fails because "plaintiff has not cited any discriminatory practice that was widespread or that was acquiesced to by senior policy making officials." (Def. Br. at 13.)

"District courts in the Second Circuit have found that a public school principal acts as a final policymaker to the extent that the ultimate harm that befell the plaintiff was under the principal's control." Zambrano-Lamhaouhi v. New York City Bd. of Educ., 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011); see also Williams v. Bd. of Educ.-City of Buffalo, No. 07–CV–698, 2008 WL 2946003, at *3 (W.D.N.Y. July 29, 2008) (finding principal acted as a final policy maker when the harassment was conducted by principal himself). Here, Borrero, the principal and plaintiff's supervisor, was finally responsible for the constructive discharge, quid pro quo harassment, and hostile work environment to which he allegedly subjected plaintiff. Therefore, this conduct can be attributed to the DOE.

14

### G. Claims Against the Individual Defendant Borrero

Defendants argue that the remaining claims against the individual defendant Borrero in his personal capacity should be dismissed because plaintiff failed to sufficiently allege his personal involvement to demonstrate that he acted under color of state law. To establish individual liability under Section 1983, a plaintiff must show (1) that the defendant is a person acting under the color of state law, and (2) that the defendant caused the plaintiff to be deprived of a federal right. Additionally, in this Circuit, plaintiff must allege personal involvement of a defendant in alleged constitutional deprivations. See Costello v. City of Burlington, 632 F.3d 41, 48–49 (2d Cir. 2011).

The complaint alleges that the individual defendant, Carlos Borrero, acted in a supervisory capacity over plaintiff during the relevant time period. (Compl. ¶ 7.) The complaint also alleges that, among other things, defendant made harassing and sexually charged comments to plaintiff, (id. ¶¶ 13, 14, 16−17), and threatened to terminate her employment unless she agreed to resign from her position, (id. ¶ 21).

The Court finds that plaintiff has sufficiently alleged personal involvement to demonstrate that defendant Borrero was acting under color of state law and engaged directly in the discriminatory conduct. At this stage, plaintiff sufficiently alleges discrimination claims against the individual defendant.

### 3. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted in part and denied in part. Plaintiff's retaliation claims are dismissed. Plaintiff's NYSHRL and NYCHRL claims against the DOE for constructive discharge, sexual harassment, and hostile work environment are dismissed with prejudice. Defendants' motion to dismiss is denied as to the remaining claims.

**SO ORDERED.**

Dated:  September 22, 2016
Central Islip, New York

                 /s/     JMA
                 JOAN M. AZRACK
                 UNITED STATES DISTRICT JUDGE